# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-1029V
UNPUBLISHED

| | |
|---|---|
| AARON COOK,<br><br>    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>    Respondent. | Chief Special Master Corcoran<br><br>Filed: June 29, 2022<br><br>Special Processing Unit (SPU); Ruling on Entitlement; Findings of Fact; Site of Vaccination; Influenza (Flu); Shoulder Injury Related to Vaccine Administration (SIRVA). |

*Glen Howard Sturtevant, Jr.,* Rawls Law Group, Richmond, VA, for Petitioner.

*Michael Johnson Dunn Brown,* U.S. Department of Justice, Washington, DC, for Respondent.

## **FINDINGS OF FACT**[1]

On March 5, 2021, Aaron Cook filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that as a result of receiving the influenza ("flu") vaccine on October 21, 2020, he suffered a right-sided shoulder injury related to vaccine administration ("SIRVA") as defined on the Vaccine Injury Table (the "Table"). Petition (ECF No. 1) at Preamble. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters. For the reasons discussed below, I find that the flu vaccine was most likely administered in Petitioner's right deltoid as alleged.

---

[1] Because this unpublished ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

### I.     Relevant Procedural History

Along with the Petition, Mr. Cook filed required medical records required under the Vaccine Act, as well as his own and his wife's unsworn declarations.[3] Exs. 1-8. On October 27, 2021, I deemed the record substantially complete pursuant to Section 11(c) of the Vaccine Act. However, I noted a discrepancy between contemporaneous record evidence indicating that Petitioner received the subject vaccine in his left shoulder, and his allegation of receiving the vaccine in his subsequently injured right shoulder. PAR Activation Order (ECF No. 11) (citing Ex. 3 at 4). On February 3, 2022, Respondent reiterated the same issue, and reported that he would not complete a medical evaluation of the claim for at least ten months. Status Report (ECF No. 23) at 2.

On February 22, 2022, I ordered Petitioner to file any additional evidence on the situs issue. Scheduling Order (Non-PDF). He filed his own supplemental declaration, Ex. 12, followed by a supplemental Statement of Completion. Petitioner did not avail himself of the opportunity to file briefing, and so Respondent has not filed a response. I have determined that a factual finding regarding the onset of Petitioner's SIRVA is required in this case, and will assist in its ultimate disposition.

### II.    Issue

At issue is whether Petitioner received the subject flu vaccine in his right arm as alleged, rather than in his left arm as documented on the contemporaneous pharmacy record. Ex. 3 at 4.

### III.   Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally

---

[3] Although not notarized, the declarations are signed under penalty of perjury. Exs. 1-2, 12; *accord* 28 U.S.C. § 1746 (regarding the weight of unsworn declarations if signed under penalty of perjury).

contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

**IV.     Finding of Fact**

I have reviewed all of the evidence filed to date. This ruling, however, is limited to determining facts pertaining to the site of the subject vaccination. Accordingly, I will only summarize or discuss evidence that directly pertains to this issue. Specifically:

- Petitioner requested certified records for the subject October 21, 2020, vaccine. In response, CVS Pharmacy provided Petitioner's completed consent form – which includes his handwritten answers to screening questions, his signature, and the date. Ex. 3 at 1-2. This form does not address situs. *Id.* CVS also provided a computerized record which provides that the vaccine was administered in his left deltoid. *Id.* at 4.

- Five days after vaccination, on October 26, 2020, Petitioner presented to his established primary care practice with a chief complaint of right shoulder pain. Ex. 4 at 2. He recounted being "given a flu vaccine last week 10/21/20 and has had pain and decreased ROM since. He denies any injury or trauma." *Id.* A physician-assistant ("PA") documented that the right shoulder displayed "nearly FROM [full range of motion] with pain above 90 degrees on abduction and extension, +mild tenderness over deltoid, no laxity." *Id.* The PA did not offer a specific assessment, but recommended ice, muscle relaxants, consulting orthopedics, and radiology of the right shoulder. *Id.* at 2-3.

- On November 24, 2020, Petitioner attended an initial consult for his right shoulder at an orthopedics practice. Ex. 5 at 6.[4] The record provides that Petitioner is right-hand dominant. *Id.* He reported right shoulder and deltoid pain, which "certainly started right after his flu shot." *Id.* On exam, the orthopedics PA observed right deltoid tenderness, as well as induration on the lateral side about two and one-half to three inches below the lateral chromium. *Id.* at 6-7. The exam findings did not resemble an infectious process or an abscess. *Id.* at 7. The orthopedics PA's assessment was right shoulder tendinitis, for which he recommended steroids and physical therapy ("PT"). *Id.*; *see also* Ex. 6 at 68 (PT referral); Ex. 5 at 2-5, Exs. 8-9 (follow-up orthopedics appointments).

- On December 1, 2020, at the initial PT evaluation, Petitioner reported "R shoulder pain after getting a flu shot on 10-21-20. [He] report[ed] being sore in his R shoulder immediately and worse the next day." Ex. 6 at 64-65. After completing six

---

[4] Petitioner had previously seen a different provider at the orthopedics practice for an unrelated knee injury. Ex. 5 at 9-10.

4

- sessions, he was discharged with a home exercise program on January 12, 2021. *Id.* at 54-63; *see also* Ex. 10 (second PT course for right shoulder).

- A January 2021 MRI of the left shoulder visualized inflammation in the right subacromial bursa extending into the subdeltoid area. *See* Ex. 5 at 5 (orthopedist's order of MRI); *id.* at 2 (discussing results).[5]

- Petitioner has averred that on October 21, 2020, he walked into the pharmacy without an appointment to receive the subject vaccination. After an employee provided him with paperwork to complete, he waited at least 10 to 15 minutes with a few other customers before being called by the pharmacist to the vaccination area. Petitioner recalls that the pharmacist seemed to be very busy, did not review his completed paperwork, pulled up his right shirt sleeve, and administered the vaccine in his right shoulder. Petitioner assumes that the first employee entered that the vaccine was to be administered in his left deltoid, and the pharmacist independently gave the vaccine in his right deltoid. Ex. 12; *see also* Ex. 1 (original declaration).

- Petitioner recalls that he developed pain upon vaccination, which he believed to be a normal side effect until it worsened rather than resolved. Exs. 1, 12.

- Petitioner's wife did not witness the vaccination, but she recalls that he began complaining one day later that his shoulder hurt a lot more than after typical vaccinations. Ex. 2 at 1.

The above medical records reflect that Petitioner consistently attributed his right shoulder pain to the flu vaccine, which he recalled receiving in that same upper extremity. While Petitioner himself was responsible for so indicating, rather than the immediate vaccination record, he consistently reported a right shoulder situs starting just five days after vaccination, and in the context of seeking accurate medical treatment. Petitioner's witness statements are entitled to some weight, and they have not otherwise been rebutted by Respondent. The statements he made to treaters that were subsequently set down in medical records also should be taken into account. *Cucuras*, 993 F.2d at 1528 ("[m]edical records, in general, warrant consideration of trustworthy evidence… [as they] contain information supplied *to* or by health professionals to facilitate diagnosis and treatment of medical conditions") (emphasis added).

---

[5] Petitioner may not have filed the original report of the MRI. He is ordered to file either the report or a status report identifying where it appears in the existing record.

This case contains additional circumstantial evidence – specifically, the objective medical documentation of right deltoid tenderness, induration, and inflammation – that establishes a right shoulder injury. And the record does not suggest any other injury or trauma which would explain these findings. Rather, the orthopedics PA who first saw Petitioner just one month into the injury's course believed that these findings were attributable to a vaccination.

The sole piece of evidence supporting that the vaccine was actually administered in Petitioner's left (opposite) arm is the CVS pharmacy's computerized vaccine administration record. Ex. 3 at 4. However, as I have noted in other cases: "[It is] not unusual for the information regarding site of vaccination in computerized systems to be incorrect. Many of these systems use a 'dropdown' menu which may not be updated each time a separate vaccine is administered to a different individual." *Arnold v. Sec'y of Health & Hum. Servs.*, No. 20-1038V, 2021 WL 2908519, *4 (Fed. Cl. Spec. Mstr. June 9, 2021) (citing *Mezzacapo v. Sec'y of Health & Hum. Servs.*, No. 18-1977V, 2021 WL 190435, at *6 (Fed. Cl. Spec. Mstr. Apr. 19, 2021); *Desai v. Sec'y of Health & Hum. Servs.*, No. 14-0811V, 2020 WL 4919777, at *14 (Fed. Cl. Spec. Mstr. July 30, 2020); *Rodgers v. Sec'y of Health & Hum. Servs.*, No. 18-0559V, 2020 WL 1870268, at *5 (Fed. Cl. Spec. Mstr. Mar. 11, 2020); *Stoliker v. Sec'y of Health & Hum. Servs.*, No. 17-0990V, 2018 WL 6718629, at *4 (Fed. Cl. Spec. Mstr. Nov. 9, 2018)).[6] Thus, as reasoned in *Arnold*, "although such records are unquestionably the first-generated documents bearing on issues pertaining to situs, they are not *per se* reliable simply *because* they come first – and in fact, the nature of the creation provides some basis for not accepting them at face value." *Arnold*, 2021 WL 2908519, at *4.

I therefore find, upon considering all evidence submitted, that the October 21, 2020, flu vaccine was most likely administered in Mr. Cook's right arm.

### V.     Scheduling Order

Based on recent data about the general processing times for SIRVA claims in general, I expect that Respondent will complete his medical review and form his tentative

---

[6] Of note in *Stoliker*, then-Chief Special Master Dorsey permitted depositions from a CVS branch manager and a pharmacist. The testimony reflected that documentation of vaccinations, including the site of administration (left versus right deltoid) are commonly generated at the beginning of the encounter with the patient. Once collected, the electronic information cannot be changed or deleted at the pharmacy level – although it is sometimes annotated by hand. *Stoliker,* 2018 WL 6718629, at *3. Special Master Dorsey deemed this testimony to be credible and accepted the handwritten notation correcting site on that petitioner's electronic record. *Id.* at *5. Here, of course, the CVS-produced record does not reflect any similar notations – which is not inconsistent with Mr. Cook's recollection that the pharmacist did not take particular care in administering his vaccine.

position in this case in approximately November 2022. I have not received both parties' positions and formally considered whether Petitioner's injury meets all criteria for a Table SIRVA. However, in the light of the above finding of fact and my preliminary review of the evidence overall, Petitioner shall proceed with preparing a demand for Respondent's consideration if he has not already done so. I understand that Respondent cannot provide a response to this demand until he has formulated his position. However, the parties should strive to be in a position to immediately discuss damages once Respondent indicates he is amenable to consideration of Petitioner's demand after Respondent's review is complete. In addition, it is sensible for Petitioner to calculate his likely damages as quickly as possible in any case pending in SPU.

Accordingly:

- **By no later than Monday, August 15, 2022, Petitioner shall file a status report providing the following information:**
    - Whether a demand has been provided to Respondent's counsel;
    - Petitioner's current treatment status and condition;
    - Whether all updated medical records have been filed; and
    - A list of each component of damages allegedly suffered by Petitioner.

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master
